MURPHY ET AL. *v.* STATE, EX REL. JACKSON SCHOOL TOWNSHIP.

[No. 13,411.  Filed December 6, 1929.]

*J. F. Regester, Branigin & Branigin* and *Slaymaker, Turner, Merrell, Adams, Ward & Locke,* for appellants.

*George W. Long, James S. Jones, R. S. Moser* and *Henry E. White,* for appellee.

NICHOLS, J.—Action by appellee against appellants, whereby appellee sought to recover from appellants on a bond for the faithful performance of a contract for the construction of a school building.

It appears by the special findings of fact that, prior to June 24, 1922, Jackson School Township of Brown county, Indiana, took all steps required by the statutes of Indiana for the construction of a high-school building in said township prior to the letting of a contract for the construction thereof, and that, on July 1, 1922, appellant Murphy submitted his bid for its construction for $15,947, together with a bidder's bond in the sum of $1,000, executed by Murphy as principal and appellant

Federal Surety Company as surety; that said bond was conditioned that if said principal should be awarded the contract, he would, within 10 days after the notice of such award, enter into a contract and give bond for the faithful performance of the contract; that said bid and bidder's bond in the sum of $1,000 bore the date of June 24, 1922, and were submitted to said Jackson School Township by appellant Murphy, which bid was opened on July 1, 1922, by said trustee and the advisory board of said township, and that it was the lowest and best bid submitted for such construction; that said bid was accepted by said trustee and advisory board of said township; that, after the acceptance thereof, and within 10 days thereafter, Murphy entered into a written contract which was signed by himself and the trustee of said township, wherein he agreed to construct a school building according to the plans and specifications drawn and prepared by the architect, and approved by the advisory board and trustee. The contract is set out in full in the findings, but, as will appear hereinafter, we need set out only the 14th provision thereof. It is as follows: "It is further mutually agreed by the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, against any claim of the owner, and no payment shall be construed to be an acceptance of any defective work."

It further appears by the findings that, on July 1, 1922, and after appellant Murphy and said trustee had entered into the contract whereby he agreed to construct the high-school building for $15,947, he delivered to the trustee a $21,000 bond, executed by himself as principal and appellant Federal Surety Company as surety, which bond was delivered and accepted as a construction bond

to secure the faithful execution of said contract as required by law, which bond is the bond now in suit; that, by a mutual mistake of all the parties thereto, said bond of $21,000 was a "bidder's bond" instead of a bond to guarantee the faithful performance of the contract entered into and signed by Murphy to construct said school building; and that, by a mutual mistake of all parties thereto, said bond was conditioned as follows: "That if the aforesaid principal shall be awarded the contract, the said principal will, within ten (10) days after the notice of said award, enter into a contract and give bond for the faithful execution of the contract," instead of the conditions that were provided by the statute, requiring said contractor to execute a bond conditioned that he would faithfully perform the terms of said contract, and that he would pay all labor, material and subcontractors as by law required, which conditions were intended to be used by appellant Murphy and by appellant Federal Surety Company and by Jackson School Township; that, by the mutual mistake of all parties thereto, said bond was executed, delivered and accepted in such defective and erroneous condition as aforesaid, and the relator believed at said time that the bond was in the correct form and to contain the true and correct conditions as provided by law for such bonds, and that appellant Murphy so believed at said time, and said Federal Surety Company, by its agent Charles Kling, and that each and all of said parties believed and understood that said bond, at said time, was to guarantee the faithful performance of said contract by said Murphy; that, by the mutual mistake of each and all of said parties, said bond was made payable to the State of Indiana instead of to the trustee of Jackson School Township; that said contract and bond were accepted and approved by said school township by its proper officers, and, immediately thereafter, Murphy entered upon the work, and so con-

tinued until such work had progressed to the point where he maintained that the same was completed according to the plans and specifications; that on September 4, 1923, the advisory board of said township was called in special session by the trustee at his office for the purpose of considering the making of final payment to Murphy for the construction of said schoolhouse; that said meeting was attended by the trustee, members of the advisory board, the architect and Murphy; that, at said time, the architect made his final certificate, and the trustee paid to Murphy, the contractor, $1,200, being in full of the balance of the contract price; that, at said time, neither the trustee nor the advisory board knew of any defects or omissions made by said contractor in the construction of said building, and neither the trustee nor the advisory board knew that Murphy had failed to construct said building as provided in the said contract; that, after said final payment, it was discovered and learned by said trustee and advisory board that said contract had not been fulfilled according to the terms thereof, and that said building had not been constructed according to said contract and the plans and specifications therein contained, and that the trustee immediately so informed Murphy and demanded of him that he correct the defects and omissions made by him in such construction, which Murphy refused to do, and, immediately thereafter, relator informed appellant surety company in writing of the defects and omissions of Murphy in the construction of the school building, which notice was received by the surety company, and that such surety company thereafter failed to correct the defects and omissions made by Murphy in the construction of such building; that, thereafter, on August 5, 1925, the trustee advertised in the manner required by law that bids would be received at the office of the trustee of said township on August 5, 1925 for the completion of said school

building in accordance with the original contract, plans and specifications as entered into by Murphy, and, on August 5, 1925, the trustee and advisory board of said township met at the office of said trustee and received bids for the completion of said building; that at said meeting only one bid was received, and that was the bid of one Ralph David, for $2,784.50, less $126 deducted for partition doors, which contract was signed by David and said trustee, and he gave bond for the faithful execution of his contract in the sum as required by law, thereafter completed his contract according to the plans and specifications, and was paid by said trustee and advisory board, $2,658.50; that neither Murphy nor appellant Federal Surety Company nor any one else ever paid the relator the $2,658.50 which relator paid to David under his said contract to have said high-school building completed in accordance with the original plans and specifications entered into by Murphy.

The court stated its conclusions of law on these findings that there is due the relator from appellants $2,658.50, with interest at six per cent per annum thereon from January 1, 1926, or a total of $3,001.71; that appellant Murphy is principal on the bond in suit and appellant surety company is surety; that the property of appellant Murphy should be first exhausted before resort be had to the property of the surety company.

After appellants' separate motions for a new trial were overruled, judgment was rendered on the conclusions, from which this appeal, appellants assigning as error the court's action in overruling their motions for a new trial, and the conclusions of law.

Appellants forcefully contend that the decision of the court is not sustained by sufficient evidence, and that it is contrary to law. We have carefully read appellants' statement of the evidence, which appellee says is substantially correct, and we have to say that there is no

evidence that the $21,000 bond, which in both its form and substance was a "bidder's bond," was ever intended by the parties thereto to have any other force and effect than is imported on its face. There is no evidence that appellant Murphy, as principal, and appellant Federal Surety Company, as surety, or either of them, delivered said bond as a construction bond to insure the performance of the building contract, nor is there any evidence that said bond was so accepted by the trustee.

Appellee, in its complaint, averred a mutual mistake in the making of the bond, but there is no evidence that any mistake was made. No witness testified that the bond was not just what it purported to be on its face nor that there was any intention to the contrary. But, aside from this question, it is expressly provided in the contract, which is set out in the findings, that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, against any claim of the owner.

The minutes of the meeting at which settlement was made show that the trustee was authorized and empowered to issue warrants of the township to appellant Murphy in the total sum of $1,200, in settlement of the balance due him on the contract, "it appearing to the satisfaction of the trustee and advisory board of said township, as evidenced by the certificate of completion of said high-school building by the superintendent of construction, J. L. Nichols, that the said work is completed as per contract and that there is due and unpaid the contractor, David H. Murphy, a balance which shall be in full of said contract, the sum of $1,200." There is no allegation in the complaint, and there were no facts shown in the evidence, and there is no finding by the court, that such acceptance and final settlement were procured through fraud or mistake, and, in the absence

of any such showing, the parties are bound thereby. Appellant has quoted extensively from *Linville* v. *State, ex rel.* (1892), 130 Ind. 210, 29 N. E. 1129, and the case is so much in point on the question under consideration that we conclude to quote it, with some abbreviations, substantially as appellant has done: "When the work has been completed, as claimed by the contractors, they so notified the board of commissioners and superintendent and engineer, when it was inspected and accepted. The engineer made a final estimate, filed it with the board of commissioners of Delaware county, who allowed it, and the contractors were paid in full according to the terms of their contract.

"This action was brought by the State on the relation of the board of commissioners of Delaware county, on the bond of the contractors, to recover damages for an alleged breach of the bond in failing to perform and complete the work according to the terms of the contract. No allegation is found in the complaint to the effect that there was any fraud, mistake or other illegality in the settlement between the contractors and the board of commissioners of Delaware county. . . .

"The law favors the settlement of business transactions by the parties, and when they make such settlements they will be held bound thereby in the absence of fraud mistake or other illegality. A voluntary settlement of accounts between parties affords a presumption that all items properly chargeable at the time were included. The presumption is not conclusive, but clear and convincing proof that such items were unintentionally omitted is necessary to sustain a subsequent claim to recover them. (Citing authorities.)

"A settlement of accounts will, generally, be deemed conclusive between the parties, unless some fraud, mistake, omission or inaccuracy is shown. (Citing authorities.) . . .

"In cases of the class to which this belongs the board of commissioners is, in a sense, the agent of those whose lands are assessed for the improvement, for the purpose of letting the work, and they are charged with the duty of selecting a competent engineer and superintendent to see that the work is performed according to the contract, and to receive and pay for the same out of the funds in its hands for that purpose.

"In this case the board of commissioners performed that duty, and, after determining that the work was done according to the contract, it settled with and paid the contractors. It is not claimed that there was any fraud or mistake, either in the acceptance of the work or in the settlement, and, if the board had power to make such settlement, it is binding, according to the authorities above cited, on all the parties.

"It is contended, however, that the board of commissioners had no power to dispense with the performance of any part of the contract, and, as a result, it could not accept the work as completed, unless it was in fact performed according to the terms of the contract.

"We do not think the case involves the question of the power of the board of commissioners to dispense with performance of any part of the contract, but the question is whether they had power to determine whether the contractors had in fact performed the contract. . . . We are of the opinion that the board of commissioners . . . shall perform the [that] duty, and when it determines that the work is completed, it is its further duty to settle with and pay the contractor. If it does not possess such power, then the surety on the bond cannot ever know when his obligation is at an end. If he had taken collateral security as an indemnity, he would not be safe in surrendering it until the statute of limitations had barred a right of action on his bond."

In the Linville case, there had been an acceptance and

settlement, and thereafter an action was brought on the bond of the contractors to recover damages for an alleged breach of the bond in failing to perform and complete the work according to the terms of the contract. In that case, it is pointed out by the court that there was no allegation in the complaint to the effect that there had been any fraud, mistake or other illegality in the settlement between the contractors and the board of commissioners, and the court held that, under such circumstances, after pointing out that a settlement of business transactions by the parties is favored by the law, the court will give full effect to such settlement in the absence of any showing as to fraud or mistake.

In *State, ex rel.*, v. *Martin, Aud.* (1926), 198 Ind. 516, 154 N. E. 284, the court, in considering a similar question, gave full effect to a settlement which had been made by a board of commissioners, saying: "The decision of the board of commissioners that the highway improvement had been completed according to the contract and should be accepted, and that the contractors should receive pay for its construction, was a judicial decision by a tribunal that had jurisdiction to make it. And the decision, even if erroneous, was not void, but is proof against an attack based upon mere allegations that the facts really were otherwise than what the board of commissioners found them to be. *State, ex rel.*, v. *Board, etc.* (1925), 196 Ind. 281, 290, 140 N. E. 198; *Hull* v. *Board, etc.* (1924), 195 Ind. 150, 143 N. E. 589.

"According to the great weight of authority, under most of the statutes and in the absence of a statute granting a right to contest the question whether the work has been done in conformity with the terms of the contract, the rule is that the acceptance by the highways authorities is conclusive upon the property owners, unless procured by fraud. (Citing authorities.)

"If the record shows that the court or other tribunal

by which an assessment was confirmed had jurisdiction, a judgment of confirmation made by such court or other tribunal is final and conclusive between the parties until and unless set aside for fraud in procuring it, and is not subject to collateral attack. 2 Page & Jones, Taxation by Assessment §927. And where it appears that an issue was joined as to whether or not the improvement had been completed in accordance with the contract, and the board of commissioners in passing on that question had decided that it had, mere allegations that by reason of facts alleged to have existed prior to the hearing thereon having been unknown to the board, the decision was erroneous, and that the contractor knew of such facts but did not disclose them to the board but 'concealed' them from it, do not amount to a charge of fraud in procuring the entry of the judgment of acceptance." (Citing authorities.)

These cases are decisive of the question here involved.

Judgment reversed, with instructions to grant a new trial.